# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **MICKEY McCURTIS** | * | **CRIMINAL NO. 04-1166** |
| **VERSUS** | * | **JUDGE JAMES** |
| **VENETIA MICHAELS** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254 (Document No. 1) filed by Petitioner Mickey McCurtis ("McCurtis"). Respondent Venetia Michaels opposes McCurtis' petition. (Document No. 17). For reasons stated below, it is recommended that the petition be **GRANTED** and that this matter be **REMANDED** to the Second Judicial District Court for the Parish of Jackson for a new trial or for further proceedings not inconsistent herewith.

## BACKGROUND

On June 22, 1999, McCurtis was convicted in state court of unauthorized entry of an inhabited dwelling and oral sexual battery, for which he received concurrent sentences of ten (10) and twenty (20) years of hard labor, respectively. Prior to sentencing and one week after his conviction, the state filed an amended bill of information charging McCurtis as a habitual offender, pursuant to La. Rev. Stat. Ann. § 15:529.1, based on a guilty plea he entered in 1995 for aggravated battery. After holding a habitual offender hearing, the court found McCurtis to be a second felony offender and, on September 7, 1999, issued the above sentence. McCurtis' subsequent motion to reconsider his sentence was denied.

In March 2000, McCurtis filed an appeal with the Louisiana Second Circuit Court of Appeal, claiming that there was insufficient evidence of his guilt and second felony offender status; that his sentence was excessive; and that the court erred in denying his motion to

reconsider. On September 27, 2000, the court denied McCurtis' appeal.

McCurtis then filed an Application for Writ of Certiorari and/or Review with the Louisiana Supreme Court. On November 2, 2001, the court vacated McCurtis' habitual offender sentences because McCurtis' "crimes formed part of a single transaction and therefore support[ed] only one multiple offender sentence under La. R. S. 15:529.1." *State v. McCurtis*, 800 So.2d 862 (La. 2001). The court remanded the case to the district court for resentencing. After being resentenced and again having his motion to reconsider denied, McCurtis appealed his resentencing to the Louisiana Second Circuit Court of Appeal, which, again, denied his appeal.

McCurtis then filed a petition for post-conviction relief in the 2nd Judicial District Court of Louisiana on February 12, 2003. This application was denied on February 14, 2003. McCurtis next filed a writ of certiorari with the Louisiana Second Circuit Court of Appeal on March 25, 2003, which was denied on May 8, 2003. Then, McCurtis appealed to the Louisiana Supreme Court on May 27, 2003, which was denied on May 14, 2004.

On May 25, 2004, McCurtis filed a federal petition for *habeas corpus* in this Court. McCurtis raised the following three claims that he also raised on state post-conviction review: (1) he was denied due process and equal protection of the law because his sentence was enhanced by use of a predicate offense that was not "final"; (2) he was denied a fair trial because the trial court allowed an allegedly biased juror to participate in the case; and (3) he was denied effective assistance of counsel because his counsel failed to object to the above errors. This Court appointed Rebecca Hudsmith to serve as McCurtis' attorney and ordered an evidentiary hearing on the issues juror bias and ineffective assistance of counsel. At the evidentiary hearing, McCurtis focused solely on the juror bias issue and not ineffective assistance of counsel since, as will be discussed below, the trial transcript reflects that defense counsel asked the jury venire the necessary questions in order to determine juror bias, but did not obtain the requested information

from the juror at issue because the juror failed to respond to such questions.

## LAW AND ANALYSIS

<u>Exhaustion and Timeliness</u>

Respondent concedes, and the Court finds, that McCurtis has presented all three of his claims to the Louisiana Supreme Court in his state application for post-conviction relief and thus has exhausted his state remedies, and that his present federal petition is timely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

<u>Standard of Review</u>

The Court's review of McCurtis' federal habeas petition is governed by the AEDPA.[1] *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under the AEDPA, a court cannot grant a petitioner federal *habeas corpus* relief unless the state court proceeding resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law; rather the decision must be objectively unreasonable." *Virgil v. Dretke*, No. 03-21129, 2006 WL 1000567, at *3 (5th Cir. April 18, 2006). A court should not grant *habeas* relief "when a state court, at a

---

[1] Pursuant to the relevant provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1):
> (d) An application for a writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

minimum, reaches a 'satisfactory conclusion.'" *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 410-11 (2000)).

Sentence Enhancement

McCurtis claims that his sentence was wrongly enhanced because the predicate offense -- his 1995 guilty plea for aggravated battery -- was not final under Louisiana's habitual offender law, La. Rev. Stat. Ann. § 15:529.1. Although McCurtis couches this error as a deprivation of due process and equal protection of the law in violation of the Constitution, it clearly pertains to the interpretation and application of Louisiana law and therefore is not cognizable on federal *habeas* review.

A state's interpretation of its own laws or rules provides no basis for federal *habeas* corpus relief because no question of a constitutional nature is involved. *See Williams v. Foti*, 813 F.2d 700 (5th Cir. 1987); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Llama-Almaguer v. Wainwright*, 666 F.2d 191, 193 (5th Cir. 1982). Accordingly, "federal courts do not review a state's failure to adhere to its own sentencing procedures . . . ." *Nichols v. Estelle*, 556 F.2d 1330, 1331 (5th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978); *see also Martinez v. Johnson*, 255 F.2d 229, 246 (5th Cir. 2001). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-8 (5th Cir. 1976)). Because McCurtis' alleged error in his sentencing is based exclusively on state law issues and is merely couched as a deprivation of due process and equal protection, it is recommended that McCurtis' petition on this ground be **DENIED.**

Juror Bias

McCurtis claims that he was denied his Sixth Amendment rights to a fair trial and impartial jury because a juror at his trial, Andrew Dale Howard ("Howard"), was biased. According to McCurtis, Howard failed to disclose during *voir dire* that his father was the owner of a store that McCurtis was convicted of burglarizing in 1995 and that his wife was the cousin of the victim's boyfriend.

*I. Relevant Legal Authorities Regarding Juror Bias*

The Fifth Circuit has stated that ". . . juror bias can come to light in two ways: 'by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed.'" *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988) (citing *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir. 1976)); *see also United States v. Wood*, 299 U.S. 123, 133 (1936). In light of the fact that Howard has stated numerous times that he was not actually biased against McCurtis when he sat on McCurtis' jury, McCurtis' *habeas* petition hinges on the concept of implied juror bias.

The landmark case addressing the implied bias doctrine is *Smith v. Phillips*, 455 U.S. 209 (1982). In *Smith*, "the Court . . . held that in most cases the remedy for claims of juror bias is a post-event hearing, in which the trial judge can examine the juror and obtain assurances that, despite the event leading to the claim of bias, the person is able to continue serving as an impartial juror." *Brooks*, 444 F.3d 328, 330 (5th Cir. 2006) (citing *Smith*, 455 U.S. at 217-18)). However, in an oft-cited concurring opinion in *Smith*, Justice O'Connor expressed her concern that there may be certain situations in which ". . . a hearing may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice." Accordingly, Justice O'Connor stated:

> While each case must turn on its own facts, there are some extreme situations

> that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction. Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.

*Smith*, 455 U.S. at 222. Furthermore, the Fifth Circuit has made clear that the implied bias doctrine is "clearly established Federal law as determined by the Supreme Court," *Brooks*, 444 F.3d at 332, and that ". . . the law in this Circuit tracks Justice O'Connor's view." *Brooks*, 418 F.3d at 434. Therefore, the key inquiry in a case involving a claim of implied juror bias is "'. . . whether [the juror's] conduct is of the genre of cases Justice O'Connor pointed to in . . . *Phillips*: juror conduct not salvageable by post event hearings.'" *Brooks*, 444 F.3d at 330 (quoting *Scott*, 854 F.2d at 700).

However, as the Fifth Circuit has stated, "[t]he implied bias doctrine neither starts [nor] ends with the Supreme Court's decision in *Smith*. *Brooks*, 444 F.3d at 330. Although Justice O'Connor's opinion is illustrative of the circumstances in which implied juror bias may be found, there is no definitive test and the inquiry is very fact specific. Accordingly, in order to determine if McCurtis' claim of implied juror bias is well-founded, it is necessary to examine the Fifth Circuit jurisprudence on the subject of implied juror bias.

The most recently decided Fifth Circuit case involving implied juror bias is *Brooks v. Dretke*, in which a juror was arrested for carrying a gun in his briefcase into the courthouse on the day the defendant's death penalty sentencing hearing began. *Brooks*, 418 F.3d at 431. Because the juror could potentially have been charged with a felony by the same prosecutor seeking the death penalty in the trial, the Fifth Circuit concluded that these facts warranted a

finding of implied juror bias. *Id.* at 332. The *Brooks* panel also cited to *Remmer v. United States (Remmer II)*, 350 U.S. 377, 381 (1956), in which bias was alleged based on the fact that a juror was offered a bribe during the trial. In *Remmer*, the Supreme Court concluded that neither the juror nor anyone else could say that he was not affected in his freedom of action as a juror as a result. *Id.* at 381. According to the Fifth Circuit, "*Remmer II* illustrates that there are certain factual circumstances, as illuminated by Justice O'Connor's concurring opinion in *Smith*, in which no reasonable person could not be affected in his actions as a juror and in which the Constitution refuses to accept any assurances to the contrary." *Brooks*, 455 F.3d at 331. Consequently, the *Brooks* court reasoned that "[t]he prosecutor's power over the juror presented an intolerable risk, one that denied [the defendant] his constitutionally entitled impartial jury" and that, in accordance with the AEDPA, the state court decision finding no implied bias was objectively unreasonable. *Id.*

In contrast to *Brooks* is *Solis v. Cockrell*, 342 F.3d 392 (5th Cir. 2003), in which the Fifth Circuit found no implied juror bias. In *Solis*, one of the jurors mentioned during deliberations that he had known the defendant for 20 years and that the defendant and his brothers had been known to break into people's homes. *Id.* at 393-394. Despite questions directed to the jury venire about whether he was related to or knew anything about the defendant, the juror did not inform the court of his knowledge of the defendant. *Id.* at 393. The Fifth Circuit rejected the claim of implied bias resting only on the fact that the juror was exposed to information prejudicial to the defendant outside the courtroom; as the court described it, the juror had simply "heard outside rumors about the defendant's criminal behavior." *Id.* at 398. In coming to this conclusion, the court explained:

> [L]ooking to other cases embracing the implied bias doctrine, we find that

7

> most have done so because the juror had a close relationship with one of the important actors in the case or was otherwise emotionally involved in the case, usually because the juror was the victim of a similar crime. Noting this delineation, some courts have cautioned that bias should not be inferred unless the facts underlying the bias are such that they "would inherently create in a juror a substantial emotional involvement, adversely affecting impartiality." In such cases, a defendant may show that a trial court's attempts to determine whether the juror is actually biased inadequately protect the defendant's right to a fair trial, because the allegedly prejudicial circumstances may be affecting the juror in ways the juror may not realize or may cause the juror to knowingly withhold the truth from the inquiring court.

*Id.* at 398-399 (quoting *United States v. Powell*, 226 F.3d 1181, 1188-89 (10th Cir. 2000). Accordingly, in light of the finding that there was nothing to suggest that the juror had a motive to lie to the court or any emotional involvement that would have influenced his decision regarding the defendant's guilt or innocense, the court concluded this was not an "extreme situation" warranting a finding of implied juror bias. *Id.* at 399-400.

Of particular significance to the case at bar are *Andrews v. Collins*, 21 F.3d 612 (5th Cir. 1994) and *United States v. Scott*, 854 F.2d 697 (5th Cir. 1988), both of which involved a familial connection between a juror and a participant in the criminal trial. In *Andrews*, the Fifth Circuit was faced with a situation in which the victim's grandson had, prior to the victim's death, been married to the juror's daughter. *Andrews*, 21 F.3d at 619-620. Despite this familial connection, the court rejected the defendant's claim of implied juror bias because the juror and the victim were never directly related; the grandson's relationship with the juror's daughter ended before the trial started; the grandson was dead at the time the victim was killed; and the juror was unaware that he was ever related to the victim. *Id.* at 620-621. Under these circumstances, the court refused to find implied bias on the basis of such a "tenuous relationship" between the juror and the victim. *Id.* at 621.

However, in *Scott*, the Fifth Circuit found implied juror bias when it was discovered after

trial that the jury foreman was the brother of a sheriff in the sheriff's office that performed some of the investigation in the case against the defendant. *Scott*, 854 F.2d at 698. When the jurors were questioned as to whether any were close relatives of law enforcement officials, the juror did not respond even after two prospective jurors were excused when they stated that their spouses were law enforcement officials. *Id.* At a post-trial hearing, the juror stated that he did not inform the court that his brother was a sheriff's deputy because he believed that his judgment would not be affected by the relationship, and the lower court denied the defendant's request for a new trial because it found that the juror's belief in his ability to be impartial was sincere. *Id.* On appeal, however, the Fifth reversed the lower court's decision.

According to the Fifth Circuit, "[a] juror may not conceal material facts disqualifying him simply because he *sincerely* believes that he can be fair in spite of them." *Id.* (emphasis in original). After noting Justice O'Connor's concurrence in Smith, the court stated that "[t]his case presents us with a combination of the two means of proving juror bias, a juror (1) with [a] connection to the circumstances in the case (2) whose express explanation of his failure to disclose that connection creates a legal presumption of bias or an "implied bias." *Id.* The court further found that the "record of the *voir dire* strongly suggests that [the juror] wanted to serve on the jury and feared that he would not be allowed to do so if he disclosed his brother's employment," and that he "consciously censored" the information at issue, believing that "it was *his* place, and not the place of the court or defense counsel, to determine whether his relations were a bar to jury service in this case." *Id*. (emphasis in original). As a result, the Fifth Circuit concluded that the juror's hostility toward the interests of the defense and the court "in itself constitutes bias," thus requiring a new trial. *Id*.

<u>					II. Evidence Regarding Juror Bias</u>

9

Juror Andrew Dale Howard, who has been married to Tressie May Hicks since 1991, admitted at the federal evidentiary hearing that, at the time he sat as a juror in McCurtis's trial, he knew not only McCurtis, but also the victim, Jacquelyn Anderson Hicks, and her husband (then her boyfriend), Stanley Hicks. Federal Evidentiary Hearing Transcript ("Tr.") at pp. 5, 9-11. As Howard explained, they are all from Chatham, a small community of about 1,000 people in which everyone "pretty much" knows everybody else, at least "by face anyway." (Tr. 6-7, 10). Furthermore, Stanley Hicks is a first cousin of Howard's wife, Tressie, and Howard knew that Stanley Hicks was Jacqueline's boyfriend, that they lived together and had children, and that they married after the trial. (Tr. 11).

According to Howard, he did not spend time with these people, but might "chat or go on or whatever" in passing if he ran into them at a Hicks family reunion. (Tr. 10). Also, Stanley sometimes came by Howard's house with others during the evening while Howard worked on motorcycles. (Tr. 18). According to Howard, his contact with Jacqueline was limited to "just passing on the road or something like that," (Tr. 12), although he did know that she worked at the bag mill plant adjacent to the big container plant where he has worked for the last 30 years. (Tr. 25). Howard also admitted that he had heard talk about the crime soon after it occurred, hearing that "somebody broke in the house on her," and that "some names were called" as possible perpetrators, including McCurtis's. (Tr. 12-13).

Howard testified that he learned during the jury selection process that the case was against McCurtis and involved Jacqueline Anderson Hicks. (Tr. 14). While he specifically recalled discussing his knowledge of McCurtis during *voir dire*, he did not recall his responses to any questions about his knowledge of Jacqueline or the case. (Tr. 16, 23-24). According to the state court record, Howard did not respond to any of the questions regarding knowledge of the

10

crime or of the victim, Jacqueline Anderson, or Stanley Hicks, although other jurors did respond. *See* State Court Record at pp. 316, 355-359, 380-382. Initially, the court asked of the venire: " I advised you of the charges against Mr. McCurtis before you came here this morning and I told you what he was charged with, I'd like to know if any of you had heard or read anything about this case prior to your coming to court today, had you heard anything about the case or read anything?" State Court Record at p. 382. Only one juror responded, and it was not Howard. State Court Record at p. 380.

After asking specific questions of specific jurors, including Howard, defense counsel directed the following to the venire: "Is there anybody on the jury panel who knows Jacqueline Anderson? Anybody know Jacqueline Anderson from Chatham? Anybody on the panel who knows or who's familiar with Stanley Hicks? Anybody know Stanley Hicks?" State Court Record at pp. 316, 320. The record reflects that two jurors responded, but Howard did not. *Id*. This occurred after Howard acknowledged knowing McCurtis but insisted that he could be fair and impartial for both the state and the defendant. State Court Record at pp. 355-359.

However, Howard did testify at the federal evidentiary hearing that he was surprised that he was selected, explaining: "by me growing up right in that area and by me knowing Mr. McCurtis and by me knowing Stanley, I thought it should be someone else from the parish that didn't know either one of them at all." (Tr. 17). Nevertheless, Howard insisted at the federal evidentiary hearing that he was unbiased, as evidenced by his unwillingness to vote to convict McCurtis of aggravated burglary, which Howard understood carried 30 more years, and aggravated oral sexual battery, and by his vote to convict McCurtis of the lesser crimes of unauthorized entry of an inhabited dwelling and oral sexual battery. (Tr. 18, 22, 27); *See* State Court Record at p. 124.

11

Tressie Hicks Howard, who has been married to Andrew Dale Howard since 1991, testified that she is from Chatham and is a first cousin of Stanley Hicks. (Tr. 29-30). While she and Stanley were not close, they would speak at the occasional family reunion, as would Stanley and her husband. (Tr. 36-37, 41). Tressie only knew Jacqueline Anderson Hicks by name, but she did know that Jacqueline was living with Stanley Hicks and that they had children together. (Tr. 31). While Tressie never had conversations with Jacqueline, she did have conversations "every now and then" with Stanley. (Tr. 32). Tressie further testified that she heard at the time that McCurtis had broken into Jacqueline's house and assaulted her. (Tr. 31). While she could not recall specifics, Tressie was sure that she and her husband had discussed the break-in after it occurred. (Tr. 32, 39). Tressie was also surprised that her husband was allowed to sit on the jury. (Tr. 33).

Stanley Hicks testified that he married Jacqueline Anderson Hicks in 1999, after the McCurtis trial, and that they have three children together. (Tr. 43-44). Prior to the break-in, he lived with Jacqueline, but at the time of the break-in he was in jail. (Tr. 44). Hicks knew McCurtis because they are both from Chatham, but they were not friends. (Tr. 45). Hicks also knew Andrew Dale Howard "just from being from the same small town," but since he is some ten years younger than Howard, he was too young to remember visiting Howard's house and watching him repair motorcycles, although he stated that his older brothers may have taken him there. (Tr. 47-48). Stanley testified that he did not ever see Howard at a Hicks family reunion, although he did recall seeing Tressie, who mainly visited with his sisters, and that Jacqueline never attended the reunions with him. (Tr. 49, 53). Other than this, according to Stanley, his relationship with Tressie and Howard was simply as persons who are related and are from Chatham. (Tr. 55).

## III. Application of Legal Authorities

With respect to McCurtis' claim that Howard's father was the owner of a store McCurtis was convicted of burglarizing in 1995, there is absolutely no evidence that this is true. McCurtis' merely recites this allegation in his affidavit and provides no confirming evidence such as a third-party affidavit or, better yet, a record of his conviction. In fact, no mention was even made of this aspect of McCurtis juror bias claim at the evidentiary hearing held in this matter. The Court, however, has obtained several copies of McCurtis' criminal record from various state and federal law enforcement agencies, and none of the records contain a conviction in 1995 for burglary. In fact, the only burglary conviction present in McCurtis' record is that underlying his present petition. The Court is permitted to, and does, take judicial notice of these facts, and they sufficiently dispel this aspect of McCurtis' implied bias claim. Fed. R. Evid. 201. Therefore, in light of the fact that the evidence presented at the aforementioned evidentiary hearing focused solely on Howard's familial connection to the victim as a basis for finding juror bias, the remainder of the discussion of McCurtis' juror bias claim will be devoted to this issue.

The Fifth Circuit has noted that the ". . . Sixth Amendment does not require " that . . . jurors be totally ignorant of the facts and issues involved" in a case. *Solis*, 342 F.3d at 398 (citing *Willie v. Magio*, 737 F.2d 1372, 1379 (5th Cir. 1984) (quoting *Irwin v. Dowd*, 366 U.S. 717, 722 (1961)). However, juror Andrew Dale Howard's involvement with the key participants in McCurtis's trial far exceeds the level of mere knowledge of the trial's facts and issues. Due to this involvement, and in light of the previously discussed Fifth Circuit precedent, the undersigned concludes that a finding of implied bias on the part of Howard is warranted.

Howard's entanglement with this case and the parties involved is more akin to the connection between the juror and a member of the sheriff's department that investigated the case

in *Scott* (wherein implied juror bias was found) than the attenuated familial connection between the juror and the victim in *Andrews* (wherein no implied juror bias was found). *Andrews* can easily be disregarded as inapplicable to the case at bar in that the juror in *Andrews* was not even aware of the familial connection between himself and the victim; therefore, one could hardly argue that the juror harbored any bias based on a relationship of which he was unaware. Howard, on the other hand, testified that he was aware that Jacqueline Hicks was the victim of the crime that was the subject of the trial and that Jacqueline was living and had children with Stanley Hicks, his wife's first cousin. Although the familial connection between Howard and Jacqueline Hicks is not as close as the brother relationship at issue in *Scott*, the undersigned finds that the connection is sufficiently strong to "inherently create in a juror a substantial emotional involvement, adversely affecting impartiality." *Solis*, 342 F.3d at 398. The government contends that a finding of implied bias is not warranted in this case due to the fact that Howard did not have a close relationship with Jacqueline and Stanley Hicks. Gov. Br. at 2-3. However, regardless of the closeness of the relationship, it is simply not reasonable to believe that Howard, despite his assurances to the contrary, was capable of being impartial given his knowledge that his wife's first cousin, with whom he was acquainted, was not only the victim's live-in boyfriend, but also the father of her children.

Additionally, the fact that Howard failed to respond to questions concerning his knowledge of the case and the parties involved places this case more in line with *Scott*. Howard was aware that McCurtis had allegedly broken into Jacqueline Anderson's home while Stanley Hicks was in jail and assaulted her. Yet, Howard did not respond when asked by the trial court if he had heard anything about the case, even though he knew at that point that the case involved an alleged burglary and assault by McCurtis on Jacqueline. Howard also failed to respond when

14

asked by defense counsel whether he knew Jacqueline Anderson or Stanley Hicks.

The government submits that there is no evidence that Howard was attempting to mislead or conceal any information in not responding to the questions. Gov. Br. at 4. However, although Howard did not recall failing to answer the questions concerning his knowledge of the case and of Jacqueline and Stanley, his assurances with respect to his ability to be fair to both the defendant and the state, combined with his admission that he was surprised that he was chosen to sit on the jury due to his knowledge of McCurtis and Stanley, suggests that he wanted to serve on the jury and censored the information he gave the court and defense counsel in order to do so. *See Scott*, 854 F.2d at 699.

While Howard may have sincerely believed in his ability to be impartial, it was not his place to make that determination. As the court stated in *Scott*, "'. . . [c]ertainly, when possible non-objectivity is secreted and compounded by the untruthfulness of a potential juror's answer on *voir dire*, the result is a deprivation of the defendant's right to a fair trial.'" 854 F.2d at 699-700 (citing *U.S. v. Perkins*, 748 F.2d 1519, 1533 (11th Cir. 1984) (quoting *U.S. v. Bynum*, 634 F.2d 768, 771 (4th Cir. 1980)). Hence, Howard's failure to respond to both the court's and defense counsel's *voir dire,* coupled with his knowledge of the case and close familial connection to the victim and her family, indicates that this is one of the rare circumstances in which a finding of implied juror bias is warranted.

The state courts' conclusion to the contrary constitutes an objectively unreasonable application of the doctrine of implied bias and is therefore worthy of federal *habeas corpus* relief under the AEDPA. Thus, this Court recommends that McCurtis' motion for *habeas corpus* relief on this ground be **GRANTED**.

Ineffective Assistance of Counsel

Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the defendant of some other constitutional right. To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). If the defendant does not make a sufficient showing as to one section of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). Furthermore, the parts of the test need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). In addition, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first part of the *Strickland* test, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *Strickland*, 466 U.S. at 689-690. The defendant must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994). Here, McCurtis' trial counsel was not deficient in failing to object to the use of his prior conviction for aggravated battery as a predicate offense, nor was he deficient in failing to object to Howard's serving as a juror. A review of the record reveals that McCurtis' prior conviction for aggravated battery was clearly final for purposes of enhancing his sentence under Louisiana's habitual offender law[2]; therefore, any

---

[2] McCurtis' focus on that fact that his probation for the aggravated battery was revoked following his 1999 trial and conviction misses the point. The probation revocation constitutes an

16

objection would have been frivolous. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). As for counsel's failure to object to Howard's serving as a juror, McCurtis concedes that he never informed counsel of the facts underlying Howard's alleged bias and therefore never provided counsel with any reason to go beyond his already extensive questioning of the entire venire, including Howard. Given Howard's failure to respond to the questions regarding his relationship with the victim and her boyfriend or his knowledge of the case, counsel's failure to object cannot constitute ineffectiveness of counsel. Therefore, it is recommended that McCurtis' petition on this ground be **DENIED.**

## CONCLUSION

For the reasons stated above, it is recommended that the petitioner's Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254 be **GRANTED** and this matter **REMANDED** to the Second Judicial District Court for the Parish of Jackson for a new trial or for further proceedings not inconsistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

---

unfavorable alteration on the terms of his sentence, not his ultimate conviction; therefore, it has no effect on the finality of his conviction.

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 3rd day of October, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE